UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**SALVADOR SANCHEZ**,

            Plaintiff,

v.                                         **Case No. 15-cv-935-PP**

**CO OLIG,
PAUL LUDVIGSON,
ANTHONY MELI,
DONALD STRAHOTA,
WILLIAM POLLARD,
and CAPTAIN WESTRA,**

            Defendants.

---

**ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER (DKT. NO. 8), DENYING PLAINTIFF'S REQUEST TO FILE EVIDENCE IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER (DKT. NO. 13), DENYING PLAINTIFF'S FIRST MOTION FOR LEAVE TO FILE AMENDED COMPLAINT AS MOOT (DKT. NO. 10), GRANTING PLAINTIFF'S SECOND MOTION FOR LEAVE TO FILE AMENDED COMPLAINT (DKT. NO. 15), AND SCREENING SECOND AMENDED COMPLAINT (DKT. NO. 1)**

---

The *pro se* plaintiff, Salvador Sanchez, is a Wisconsin state prisoner. He has filed an amended complaint[1] (Dkt. No. 15-2) under 42 U.S.C. §1983, alleging that the defendants violated his civil rights. On August 13, 2015, the court received from the plaintiff the full filing fee.

---

[1] The plaintiff filed an original complaint (Dkt. No. 1), a first motion to amend the complaint along with a proposed amended complaint (Dkt. No. 10), and a second motion to amend the complaint along with a proposed amended complaint (Dkt No. 15). As discussed in the body of this order, the court will deny as moot the first motion to amend, grant the second motion to amend, and screen the second amended complaint (Dkt. No. 15-2).

1

**Motion for Temporary Restraining Order and Preliminary Injunction (Dkt. No. 8), and Request to File Evidence in Support of the Motion (Dkt. No. 13)**

Shortly after he filed his original complaint, the plaintiff filed a motion for temporary restraining order and preliminary injunction. Dkt. No. 8. He seeks transfer to another institution. The plaintiff contends that he is in danger of harassment and retaliation if he remains at Waupun Correctional Institution based on this lawsuit. Id. at 7. The plaintiff also states that he attended high school with one of the officers at Waupun Correctional Institution (not a defendant), that he had a relationship with the officer's sister than ended badly, and that the officer is aware of this. Id. at 4.

To obtain preliminary injunctive relief, whether through a TRO or preliminary injunction, the plaintiff must show that (1) his underlying case has some likelihood of success on the merits, (2) no adequate remedy at law exists, and (3) he will suffer irreparable harm without the injunction. Wood v. Buss, 496 F.3d 620, 622 (7th Cir. 2007). If the plaintiff shows those three factors, the court then must balance the harm to each party and to the public interest from granting or denying the injunction. Id.; Korte v. Sebelius, 735 F.3d 654, 665 (7th Cir. 2013); Cooper v. Salazar, 196 F.3d 809, 813 (7th Cir. 1999).

The plaintiff argues that he has shown, by the allegations in the complaint, that the defendants are capable of retaliation when someone does something that they don't like. He argues that now that he has filed his complaint in federal court, the defendants "will retaliate," and will continue to

2

Case 2:15-cv-00935-PP   Filed 01/15/16   Page 2 of 14   Document 17

hold him in segregation. He argues that because he suffers from an anxiety disorder, remaining in segregation will damage him.

The court finds that the plaintiff has not met the necessary requirements for the issuance of a temporary restraining order. First, the plaintiff has not demonstrated a sufficient likelihood of success on the merits of his claims at this stage. His complaint consists solely of allegations that the defendants verbally abuse him, file false conduct reports against him, and keep him in segregation unnecessarily. As yet, the plaintiff has not proven that these things are occurring, or are occurring out of retaliation. In addition, the allegations related to the officer who knows the plaintiff had a relationship with his sister do not relate to the plaintiff's claims in this lawsuit. See Kaimowitz v. Orlando, Fla., 122 F.3d 41, 43 (11th Cir. 1997) (citing De Beers Consol. Mines v. U.S., 325 U.S. 212, 220 (1945)); see also Omega World Travel v. TWA, 111 F.3d 14, 16 (4th Cir. 1997); Devose v. Herrington, 42 F.3d 470, 471 (8th Cir. 1994) (per curiam) ("[A] party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint.") (citing Penn v. San Juan Hosp., Inc., 528 F.2d 1181, 1185 (10th Cir. 1975)).

Second, the plaintiff has not demonstrated that no adequate remedy at law exists. If he proves that the defendants have violated his rights, he has a remedy—he can collect damages from the defendants. In fact, that is what he has asked for in his second amended complaint. Dkt. No. 15-2 at 5.

Finally, the plaintiff has alleged that he will suffer "irreparable harm" if he stays in segregation, because it will make his anxiety worse than it already is. This is not a sufficient allegation for irreparable harm; the plaintiff already suffers from an anxiety disorder, and likely the fact of being incarcerated at all exacerbates that condition.

For all of these reasons, the court will deny the plaintiff's motion for a preliminary injunction and temporary restraining order. Dkt. No. 8. Because the plaintiff has not met the requirements for the issuance of a temporary restraining order, the court also denies the plaintiff's request to submit evidence in support of the motion. Dkt. No. 13.[2]

**Plaintiff's First Motion for Leave to File An Amended Complaint**

On August 18, 2015, just a few days after he filed his original complaint, the plaintiff filed a motion asking for leave to amend that complaint. Dkt. No. 10. Fed. R. Civ. P. 15(a) states that if a party amends a pleading within twenty-one days of serving it, the party does not need the court's permission. In this case, the plaintiff filed his first motion for leave to amend the complaint only two weeks after he filed the original, and before the court had screened his complaint or ordered it served on the defendants.

---

[2] The court notes that the evidence the plaintiff wished to submit consists of affidavits from three other inmates at Waupun Correctional. The three inmates allege that the Waupun Correctional staff—and some of the named defendants in this suit—retaliate against inmates by denying them their mail, not giving them supplies, making false conduct reports, placing inmates in segregation and taking inmates' legal papers. Again, if the plaintiff proves that any or all of these things happened to him at the hands of the named defendants, he may obtain damages from the named defendants.

4

Even though the plaintiff timely filed his first motion to amend the complaint, however, the court will deny the motion as moot, because since then, he has filed a second motion, along with a second proposed amended complaint. Dkt. No. 15. That second motion supersedes the first one.

**Plaintiff's Second Motion for Leave to File an Amended Complaint**

Because the court has not yet ordered the complaint to be served on the defendants, the court finds that the plaintiff's second motion for leave to file an amended complaint is timely under F.R.C.P. 15(a). The court will grant the motion, and order the clerk of court to docket the pleading at Dkt. No. 15-2 as the plaintiff's second amended complaint. This complaint will be the operative complaint in this case, and it is this complaint that the court screens below.

**Order Screening Complaint**

The law requires courts to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Denton v. Hernandez, 504 U.S. 25, 31 (1992); Neitzke v. Williams, 490 U.S. 319, 325 (1989); Hutchinson ex rel. Baker v. Spink, 126 F.3d 895, 900 (7th Cir. 1997). The court may, therefore, dismiss a claim as frivolous

5

where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327. "Malicious," although sometimes treated as a synonym for "frivolous," "is more usefully construed as intended to harass." Lindell v. McCallum, 352 F.3d 1107, 1109-10 (7th Cir. 2003) (citations omitted).

To state a cognizable claim under the federal notice pleading system, the plaintiff shall provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). The plaintiff need not plead specific facts and his statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). However, a complaint that offers "labels and conclusions" or "formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." Id. (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). The complaint allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citation omitted).

In considering whether a complaint states a claim, courts should follow the principles set forth in Twombly. First, the court must "identify[] pleadings

6

that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679. Legal conclusions must be supported by factual allegations. Id. Second, if there are well-pleaded factual allegations, the court must "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that: 1) he was deprived of a right secured by the Constitution or laws of the United States; and 2) the deprivation was visited upon him by a person or persons acting under color of state law. Buchanan-Moore v. Cnty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of N. Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court should give the plaintiff's pro se allegations, "however inartfully pleaded," a liberal construction. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

The plaintiff is incarcerated at Waupun Correctional Institution. He alleges that on June 9, 2015, defendant Officer Olig conducted the 6 a.m. "medication pass" on the unit. Before medication pass, an officer announces "Medication" over the loud speaker, and inmates must be at their cell doors with the light on to receive their medication. On the morning in question, the plaintiff alleges that Officer Olig pushed the medication cart very fast right after the announcement, and that he passed up ten to fifteen cells, including the plaintiff's. The plaintiff called out in frustration that he needed his medication, as did other inmates. Officer Olig approached the plaintiff's cell door. The

7

plaintiff had both hands on the door and his face was close to the window. Officer Olig then kicked the door. The cells doors have one to two inches of "give," meaning that you can push or pull them one to two inches. The plaintiff alleges that Officer Olig knew this, and that when he when kicked the plaintiff's door, the plaintiff's finger caught in the right side door jam. As a result, tissue was torn from the area of his latest surgery and both sides of his finger were pinched, causing severe nerve pain. The plaintiff alleges that Officer Olig knew that the plaintiff might be seriously injured when he kicked the door.

When Officer Olig completed the medication pass, the unit sergeant instructed him to do a second medication pass, which he did. At the second medication pass, the plaintiff received his medication, as did the other inmates who did not receive their medication during the first pass.

Officer Olig apologized for the plaintiff's injury, and later that day he took the plaintiff to see the nurse. The plaintiff told the nurse what happened while Officer Olig was present. The nurse treated the plaintiff and told him that he would see a hand specialist soon.

The plaintiff filed a grievance about the incident. The plaintiff alleges that, per the first step in the complaint process, the plaintiff wrote to defendant Security Director Meli and to Warden William Pollard. They referred the complaint to defendant Unit Manager Paul Ludvigson. Ludvigson then issued the plaintiff a conduct report for lying about staff.

The plaintiff alleges that at some point in the past, he had received a conduct report for "lying on staff" after complaining about his treatment during

8

a trip to see the nurse about a kidney stone. He was offered sixty days in segregation to resolve that report. He states he was told that if he didn't accept that deal, he'd get "at least double." Dkt. No. 15-2 at 7. Accordingly, the plaintiff accepted the sixty-day punishment.

After he received the subsequent "lying on staff" conduct report with regard to the incident with defendant Olig, the plaintiff alleges that he was offered 120 days in segregation to resolve the report. The plaintiff states that he could not accept this offer, even though staff reminded him that he'd "get more time" if he refused the deal. Id.

At the disciplinary hearing, Officer Olig denied kicking the plaintiff's door. The plaintiff alleges that he requested the video of the medication pass, but that the only video provided was of the second medication pass that Olig did, not the first pass when he allegedly kicked the door. Defendant Captain Westra conducted the disciplinary hearing. The plaintiff states that at the end of the hearing, he "was given an additional four months in segregation." Id. at 8. (The court cannot tell from the plaintiff's complaint whether he received four months in addition to the six months he got for the previous report, or whether he simply received four months for the Olig incident, or whether he received four months in addition to the 120 days—three months—the institution had offered him to get him to settle the Olig incident. In other words, the court doesn't know whether the discipline on the Olig incident resulted in the plaintiff serving four months in segregation, or seven months in segregation, or ten months in segregation, total.)

9

The plaintiff claims that all of the defendants retaliated against him after he filed the grievance about Officer Olig, by giving him the allegedly false conduct report and by participating in the disciplinary hearing. He also claims that Officer Olig used excessive force when he kicked the door. The plaintiff seeks compensatory damages.

To state a retaliation claim, the plaintiff must allege that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the [d]efendants' decision to take the retaliatory action." Bridges v. Gilbert, 557 F.3d 541, 546 (7th Cir. 2009) (internal quotations omitted).

In this case, the plaintiff alleges that he engaged in protected First Amendment activity—he filed a grievance against defendant Olig for the incident regarding the missed medication and the kick to the door. He also alleges that he has suffered a deprivation that would chill his exercise of his First Amendment rights in the future—he was issued a conduct report for lying, and sentenced to additional time in segregation. Finally, he argues that the reason he was subjected to the conduct report and the additional segregation time was because he filed the grievance regarding defendant Olig.

The court finds that at this point, the plaintiff has made sufficient allegations for the court to allow him to proceed on retaliation claims against defendant Ludvigson (who issued the conduct report claiming that the plaintiff lied about staff), defendant Olig (who testified at the disciplinary hearing that

10

he did not kick the plaintiff's door), and Captain Westra (who conducted the conduct hearing and issued the sanction of additional segregation). The plaintiff has not alleged sufficient facts to support claims against Meli and Pollard—he alleges only that they passed his grievance on to Ludvigson. He makes no allegations at all against defendant Strahota. The court will dismiss defendants Meli, Pollard and Strahota.

The court also finds that the plaintiff has alleged sufficient facts to allow him to proceed on an excessive force claim against defendant Olig. "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6-7 (1992); see also Gomez v. Randle, 680 F.3d 859, 864-65 (7th Cir. 2012). Whether a guard applied force in good faith or, rather, maliciously with intent to cause harm, turns on factors including the threat reasonably perceived by the guard, the need for and amount of force used, efforts made to temper the severity of force used, and the injury suffered by the prisoner. See Whitley v. Albers, 475 U.S. 312, 320-21 (1986); Rice ex. rel. Rice v. Corr. Med. Servs., 675 F.3d 650, 668 (7th Cir. 2012); Fillmore v. Page, 358 F.3d 496, 504 (7th Cir. 2004). To prove an excessive force claim, "a §1983 plaintiff must establish that prison officials acted wantonly; negligence or gross negligence is not enough." Gomez, 680 F.3d at 864 (citing Harper v. Albert, 400 F.3d 1052, 1065 (7th Cir. 2005)).

11

In this case, the plaintiff has alleged that Olig knew that he would cause harm to the plaintiff when he kicked the door and injured the plaintiff's hand. He has also alleged that Olig wasn't trying to maintain or restore discipline, but trying to cause harm to the plaintiff. The court will allow the plaintiff to proceed on an excessive force claim against defendant Olig.

**Conclusion**

The court **DENIES** the plaintiff's motion for temporary restraining order and preliminary injunction. Dkt. No. 8. The court also **DENIES** the plaintiff's request to submit evidence in support of that motion. Dkt. No. 13.

The court **DENIES AS MOOT** that plaintiff's first motion to amend the complaint. Dkt. No. 10.

The court **GRANTS** the plaintiff's second motion to amend the complaint Dkt. No. 15. The court **ORDERS** that the clerk's office docket the second amended complaint filed September 14, 2015 (Dkt. No. 15-2) as the operative complaint in this case.

The court **DISMISSES** defendants Anthony Meli, Donald Strahota and William Pollard.

The court **ORDERS** that the plaintiff is allowed to proceed on a First Amendment retaliation claim against defendants Olig, Ludvigson and Westra. The court further **ORDERS** that the plaintiff is allowed to proceed on an Eighth Amendment excessive force claim against defendant Olig.

The court **ORDERS** that pursuant to an informal service agreement between the Wisconsin Department of Justice and this court, copies of

plaintiff's complaint and this order are being electronically sent today to the Wisconsin Department of Justice for service on the state defendants.

The court **ORDERS** that, pursuant to the informal service agreement between the Wisconsin Department of Justice and this court, the defendants shall file a responsive pleading to the complaint within sixty days of receiving electronic notice of this order.

The court **ORDERS** that pursuant to the Prisoner E-Filing Program, the plaintiff shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. The Prisoner E-Filing Program is in effect at Dodge Correctional Institution, Green Bay Correctional Institution, Waupun Correctional Institution, and Wisconsin Secure Program Facility and, therefore, if the plaintiff is no longer incarcerated at one of those institutions, he will be required to submit all correspondence and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

THE PLAINTIFF SHOULD NOT MAIL ANY PLEADINGS DIRECTLY TO THE JUDGE OR THE JUDGE'S CHAMBERS. Doing so will only delay proceedings. Because the clerk of court will electronically docket each pleading, the plaintiff does not need to send copies to the defendants by mail. The plaintiff should be aware that if he fails to timely file pleadings or other documents, it may result in the court dismissing his case for failure to

prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, which would affect the legal rights of the parties.

The court will mail a copy of this order be sent to the Warden of Waupun Correctional Institution.

Dated at Milwaukee this 15th day of January, 2016.

BY THE COURT:

HON. PAMELA PEPPER
United States District Judge